[L. A. No. 19376. In Bank. Aug. 20, 1946.]

Estate of JAMES ROBERT BROOKS, Deceased. BESSIE M. BROOKS, Respondent, v. EMMA BROOKS, Appellant.

Newby, Holder & Newby for Appellant.

Perry F. Backus for Respondent.

TRAYNOR, J.—Petitioner and decedent were married in September, 1936, and separated in June, 1940. Following their separation decedent brought two actions against his wife, one for divorce, in which she filed a cross-complaint asking that a divorce be granted her, and the other for the recovery of money allegedly paid her under the terms of a void antenuptial contract. In the divorce action decedent prevailed in the trial court, but petitioner secured a reversal of that part of the judgment granting decedent an interlocutory decree. (*Brooks* v. *Brooks,* 53 Cal.App.2d 95 [127 P.2d 296].) Petitioner allowed the judgment to become final without appeal, however, insofar as it denied her the divorce prayed for in her cross-complaint. In the other action petitioner prevailed after two appeals had been taken. (*Brooks* v. *Brooks,* 48 Cal.App. 2d 347 [119 P.2d 970]; *Brooks* v. *Brooks,* 63 Cal.App.2d 671 [147 P.2d 417].) In July, 1942, while both actions were still pending, petitioner made a written offer of reconciliation, which her husband did not answer. A year later, after the judgment in the divorce action had become final, petitioner in turn brought an action for divorce. As a result of negotiations between the parties, decedent agreed not to contest the action, waived his motion for a change of venue, and paid his wife $165 for attorney's fees and costs, and she agreed to make no other demands upon him in the action and joined him in the abandonment of the homestead that she had selected in 1939 from his separate property. Accordingly she was awarded an interlocutory decree of divorce on October 11, 1943, that

made no provision for her support. Her husband died on June 4, 1944, and she thereafter applied to the probate court for a family allowance and a probate homestead upon the property that she had previously abandoned as a homestead. Decedent's sister appeals, as executrix of his estate, from the order granting petitioner such allowance and homestead.

Section 680 of the Probate Code provides that a widow is entitled to an allowance for her maintenance during the settlement of the estate, while section 661 of that code gives the surviving spouse the right to a probate homestead. Both sections are part of chapter 11 of division 3 of the Probate Code in which the Legislature has outlined the policy of this state regarding the "support of the family" pending the administration of an estate. With regard to the rights of a surviving wife, the two sections are parallel, and cases construing one are cited authoritatively in cases construing the other. Our determination as to petitioner's right to a family allowance will therefore be decisive as to her right to a probate homestead.

▪ Although section 680 requires no more of an applicant for a family allowance than that she be the decedent's widow, it is settled that it does not give an absolute statutory right to such an allowance to every applicant who establishes that she is the decedent's widow. An applicant may have waived her right to an allowance by an agreement to that effect. (*Estate of Yoell,* 164 Cal. 540 [129 P. 999] ; *Estate of McCoy,* 51 Cal. App.2d 483 [125 P.2d 71] ; see 11A Cal.Jur., Executors· and Administrators, § 379), or may have lost that right by her conduct. (*Estate of Miller,* 158 Cal. 420 [111. P. 255] ; *Estate of Bose,* 158 Cal. 428 [111 P. 258] ; *Estate of Fulton,* 15 Cal. App.2d 202 [59 P.2d 508].) The executrix contends that the cases denying an allowance to a widow because of her conduct do so on the ground that by that conduct she lost her right to be supported by her husband during his life, and that correspondingly petitioner should be denied an allowance since she lost her right to support approximately eight months before her husband's death. The precise question as to the effect of an interlocutory decree of divorce granted the wife without any provision for her support upon her right to a family allowance has never been expressly passed upon in this state. It must be recognized, however, that two decisions of this court and two decisions of the District Court of Appeal strongly imply that such a decree will not prevent her from obtaining a family allowance. (*Estate of Gould,* 181 Cal. 11 [183 P. 146] ;

*Estate of Bidigare,* 215 Cal. 28 [8 P.2d 123] ; *Estate of Breitter,* 69 Cal.App. 424 [231 P. 351] ; *Estate of Malouf,* 67 Cal. App.2d 589 [155 P.2d 121].) Since there are several cases decided both by this court and by the District Court of Appeal holding that a wife is not entitled to an allowance unless she was entitled to support before her husband's death, the development of the California law on the subject must be reexamined.

In the first case, decided under a statute different from the one now in effect in that it provided for an allowance for the maintenance of the family of the decedent rather than for the maintenance of the widow and minor children, the court denied an allowance to a wife who had contracted a second marriage under the erroneous belief that her marriage to the decedent had been terminated by a divorce. (*Estate of Byrne,* Myr. Prob. Rep. 1.) Although the second marriage was void, it nevertheless released decedent from any liability for her support. Since she could not demand before his death that he support her, she was not a member of his family within the meaning of the statute and was therefore not entitled to an allowance. In *In re Noah,* 73 Cal. 583 [15 P. 287, 2 Am.St. Rep. 829], as in all subsequent cases, the statute involved was substantially similar to section 680 of the Probate Code. Although the wife in that case had waived "all her marital claims" under the terms of a separation agreement, the court denied her an allowance, but not on the ground that her waiver was broad enough to cover such an allowance. Relying instead upon *Estate of Byrne, supra,* it pointed out that the wife had lost nothing by her husband's death that she previously possessed and denied her an allowance on the ground that since she was not entitled to demand that he support her before his death she was not "the immediate family of the deceased, to whom was to be continued, during the settlement of the estate, the 'reasonable support' which the husband, in ordinary cases is presumed to furnish his wife." (73 Cal. 583, 589.) In *Wickersham* v. *Comerford,* 96 Cal. 433 [31 P. 358], the wife had also entered into a separation agreement which, under the decisions that were to follow, could have been construed as a waiver. In denying her a probate homestead, however, this court relied, not upon such waiver, but upon the same grounds that it had used in *In re Noah, supra. Estate of Miller, supra,* 158 Cal. 420, and *Estate of Bose, supra,* 158 Cal. 428, in which the wife had abandoned her husband before his death, were

likewise decided upon those grounds. They were also relied upon in *Estate of Yoell, supra,* 164 Cal. 540, although only as an alternative basis for the decision. Thus, it became "well settled that a surviving widow who had separated from her husband and had ceased to be a member of his family, or to be entitled to his support at the time of his death, is not entitled to an allowance. . . ." (*Estate of McSwain,* 176 Cal. 280, 284 [168 P. 117].)

In *Estate of Gould, supra,* 181 Cal. 11, however, this court for the first time approached the problem differently. The husband died within a year of the granting to his wife of an interlocutory decree of divorce that assigned to him certain property "free and clear of all [her] claim." In granting her a family allowance out of that property the court stated that the statutory provision for such allowance was "not conditioned upon her having lived in a family relation with her husband at the time of his death." (181 Cal. 11, 13.) No California cases were cited in support of that proposition, but the court relied upon a case from Georgia (*Farris* v. *Battle,* 80 Ga. 187 [7 S.E. 262]) and a case from Missouri (*King* v. *Executor of King,* 64 Mo.App. 301). Although they both support the proposition for which they were cited, it should be noted that *King* v. *Executor of King, supra,* is squarely opposed to *Estate of Miller, supra,* and *Estate of Bose, supra,* for it gives an allowance to a wife who deserted her husband, and that in *Farris* v. *Battle, supra,* the granting of a family allowance is regarded as part of the intestate distribution of the estate, a view that is not followed in the California cases. (See *Estate of Kennedy,* 157 Cal. 517, 527 [108 P. 280, 29 L.R.A.N.S. 428] ; *Estate of Simonton,* 183 Cal. 53, 59 [190 P. 442] ; *Estate of Woodburn,* 212 Cal. 683, 687 [300 P. 22] ; 11A Cal.Jur., Executors and Administrators, § 369.) Nor did the court consider in *Estate of Gould, supra,* whether the fact that the interlocutory decree apparently made no provision for the wife's support affected her right to an allowance. It passed upon the effect of the decree only to determine whether the clause that gave the husband certain property "free and clear of all claim" of his wife covered her claim to a family allowance. On the authority of *Estate of Whitney,* 171 Cal. 750 [154 P. 855], the court held that it did not. In *Estate of Whitney, supra,* the spouses had entered into an agreement primarily intended to give the husband the right to dispose of the entire community property by will. The

court held that the wife had not waived her right to an allowance, stating that "the right should not be held to have been surrendered by an agreement between the spouses 'except by clear and explicit language.'" (171 Cal. 750, 756.) Since the spouses had lived together until the husband's death under conditions that made him liable for her support until that time, no issue was raised in that case as to whether the widow's right to an allowance was dependent upon her having been entitled to support as a wife. In applying the "clear and explicit language" test to the language of the decree in *Estate of Gould, supra,* the court overlooked the fact, however, that in that case, unlike *Estate of Whitney, supra,* the husband was not liable for his wife's support at the time of his death. Since the divorce was granted to the wife, it was presumably because of her husband's fault that she was not a member of his family at the time of his death. The court would have been justified therefore in holding that under such circumstances her right to an allowance could not be made to depend upon the existence of the family relation, a qualification that it had already recognized in *In re Noah, supra.* There was apparently no justification, however, for unqualifiedly holding that the existence of the family relation was immaterial, or for failing to determine whether the right to an allowance depended upon the right to support during the husband's life. The court may have regarded the "family relation" test and the "right to support" test as being the same. It is clear, however, that under certain circumstances, such as those of *Estate of Gould, supra,* or of the present case, the two tests do not overlap.

In *Estate of Parkinson,* 193 Cal. 354 [224 P. 453], and *Estate of Henningsen,* 199 Cal. 103 [247 P. 1082], this court reaffirmed the proposition that the existence of the family relation was not an essential prerequisite to the granting of an allowance or a probate homestead. In the former case, however, the wife was receiving support at the time of her husband's death; in the latter the family relation had not in fact been dissolved. In the next case (*Estate of Boeson,* 201 Cal. 36 [255 P. 800], disapproved on other grounds in *Leupe* v. *Leupe,* 21 Cal.2d 145, 149 [130 P.2d 697]) the court seemingly returned to the position that it had held before deciding *Estate of Gould, supra,* for it stated in a dictum, citing *In re Noah, supra, Estate of Miller, supra, Estate of Bose, supra,* and *Estate of Yoell, supra,* that before

an allowance can be denied, the wife must not only have ceased to be a member of the family, but must also have lost her right to support.

In the last case on the subject decided by this court (*Estate of Bidigare, supra,* 215 Cal. 28) the wife had not only secured an interlocutory decree of divorce without provision for her support, but had also entered into a separation agreement whereby she expressly waived her right to support during her husband's life. The court did not consider, however, whether the agreement or the decree had cut off the wife's right to any family allowance by making her husband no longer liable for her support. It stated the only issue to be whether the agreement contained a waiver of the allowance and held that it did not, construing the agreement strictly in favor of the wife on the authority of *Estate of Whitney, supra,* and *Estate of Gould, supra.*

In *Estate of Breitter, supra,* 69 Cal.App. 424, the wife had also secured an interlocutory decree of divorce that made no provision for her support. After recognizing that the code provisions were enacted for the protection of those entitled to support at the time of the husband's death, the court reversed an order denying the wife a family allowance, without apparently noticing that she was not entitled to the support that had just been declared to be a prerequisite to the granting of such allowance. In *Estate of Fulton, supra,* 15 Cal. App.2d 202, the wife was denied a probate homestead on the ground that she had abandoned her husband under conditions rendering him no longer liable for her support. In *Estate of Ruiz,* 53 Cal.App.2d 363 [127 P.2d 945] (hearing denied), and *Estate of Egeline,* 53 Cal.App.2d 368 [127 P.2d 948], the court denied an allowance to the wife on the ground that an interlocutory decree of divorce granted to the husband had previously freed him from all obligation to support her. In *Estate of Malouf, supra,* 67 Cal.App.2d 589, however, the wife prevailed, although the interlocutory decree that she had secured was silent about support. Again the court did not consider the fact that she was not entitled to support before her husband's death.

■ This court must therefore choose between two lines of decisions that cannot be reconciled. One of them makes the granting of an allowance dependent upon the wife's right to support at the time of her husband's death; the other does not. Our choice must be governed primarily by a con-

sideration of what the Legislature intended when it enacted the provisions for the "support of the family" involved in all those cases. Some of those cases have nothing to say about the nature and purpose of a family allowance. Those that do discuss the matter, however, all seem to agree that a family allowance was intended by the Legislature to continue, during the settlement of the estate, the support that the wife was previously receiving or was at least entitled to receive. (See *Estate of Byrne, supra,* Myr. Prob. Rep. 1; *In re Noah, supra,* 73 Cal. 583; *Estate of Miller, supra,* 158 Cal. 420; *Estate of Yoell, supra,* 164 Cal. 540; *Estate of Fulton, supra,* 15 Cal. App.2d 202; *Estate of Ruiz, supra,* 53 Cal.App.2d 363; *Estate of Egeline, supra,* 53 Cal.App.2d 368.) The cases that do not insist upon the condition that the wife be entitled to support seem to lose sight of the purposes for which an allowance is granted. They give her an allowance intended to continue a support that she neither received previously nor was entitled to receive. No doubt the Legislature intended also to protect the family by restricting the decedent's absolute testamentary freedom and by continuing to the family as against creditors the exemptions to which the decedent was entitled during his life. (See 1 Woerner, Administration (3d ed.) § 77; Atkinson, Wills, 101.) That protection is accorded them, however, only as a part of the broader protection that is derived from the decedent's duty to support them. Our choice of the first line of cases finds additional justification in the fact that the second is based upon *Estate of Gould, supra,* a case decided without regard for previous California authority.

It is settled in this state that a wife who obtains an interlocutory decree of divorce making no provision for her support is not entitled to support. (*London G. & A. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, 465-6 [184 P. 864].)

The order appealed from is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.